631 A.2d 1072

**CITY OF PHILADELPHIA, Appellant,**

v.

**TAX REVIEW BOARD to the Use of ACE DUMP TRUCK SERVICE and Ace Service Corporation, Appellees.**

Commonwealth Court of Pennsylvania.

Argued May 11, 1993.

Decided Sept. 13, 1993.

---

404

Joseph F. Lynch, Asst. City Sol., for appellant.

Stewart M. Weintraub, for appellees.

Before PALLADINO, FRIEDMAN and KELLEY, JJ.

PALLADINO, Judge.

City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) which affirmed the decision of the City's Tax Review Board (Board) granting mercantile license tax (MLT) and general business tax (GBT) relief to Ace Dump Truck Service and its successor in interest, Ace Service Corporation (collectively, Ace). We affirm.

## I. Ace's Business

Ace is engaged in the business of waste removal, transportation and disposal. Ace picks up trash from private customers in Philadelphia and disposes it in landfill sites in New Jersey. Specifically, Ace dispatches one of its trucks with an empty trash container to a customer's location in the city; drops off the empty container; later picks up a full container; transports the full container to a landfill site in New Jersey where the trash is deposited; and then returns to the city with the empty container. Ace maintains its primary place of business, its fleet of trucks and trash containers in Philadelphia, while maintaining a billing office in New Jersey.

## II. Procedural History

This case arises from the filing by Ace of refund petitions and petitions for review of MLT and GBT assessments against it for the years 1974 through 1980. In its petitions, Ace asserted, *inter alia,* that it was entitled to an exclusion from MLT and GBT for that portion of its receipts attributable to services rendered outside Philadelphia.

At hearings before the Board, Ace asserted that it was entitled to an exclusion of 65% of its receipts on the basis that 65% of its service was rendered outside of the city limits.[1] City maintained that Ace's entire service was performed within Philadelphia. The Board took the case under advisement.

---

1. Ace arrived at this percentage by determining the time expended in performing the individual elements of its service for a particular customer in comparison to the total time expended for that customer.

Thereafter, the Board determined that Ace's gross receipts for purposes of MLT and GBT were to be allocated to exclude that portion attributable to services performed in New Jersey. By letter dated April 16, 1987, the Board informed both parties of this determination and requested that they meet to agree on a fair and equitable allocation. No such meeting occurred. Again, on August 21, 1989, the Board requested City to reach a settlement with Ace or provide the Board with a compromise figure for the Board to consider along with Ace's figure of 65%.

When City did not comply with this request, the Board issued a final determination that Ace was entitled to exclude 65% of its gross receipts from MLT and GBT as being attributable to services performed outside of the city. Specifically rejecting City's argument that Ace's entire service is performed within the city, the Board reasoned that Ace's service is composed of several parts, some of which are performed within the city and some of which are rendered outside of the city. The Board further concluded that the service for which Ace is hired is the pick up *and* disposal of the trash, not merely the former.

City appealed to the trial court which affirmed the Board's decision.

### III. Discussion

On appeal to this court, two issues are presented: 1) whether the trial court erred in affirming the Board's decision that a portion of Ace's service was rendered outside of the city and the receipts therefrom consequently were not subject to MLT; and 2) whether the trial court erred in affirming the Board's decision that a portion of Ace's service was rendered outside of the city and the receipts therefrom consequently were not subject to GBT.[2]

2. Our scope of review where, as here, the trial court takes no additional evidence is the same as that of the trial court; specifically, our review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether the Board's findings of fact are not supported by substantial evidence. *City of Philadelphia v.*

■ As a preliminary matter, we note that the rules of construction are clear that exclusions in tax statutes are to be strictly construed against the taxing body and in favor of the taxpayer to the extent that there is any reasonable doubt regarding the meaning of the statutory language. *Union Paving Co. v. Commonwealth,* 148 Pa.Commonwealth Ct. 358, 611 A.2d 360 (1992).

With respect to the first issue, City asserts that Ace provides a single, indivisible service which is performed wholly within the city when a customer's trash is picked up and removed from its premises. It is, therefore, City's position that Ace is not entitled to exclude any portion of its receipts for purposes of computing MLT. We disagree.

■ City's argument must be rejected on several grounds. First, City's argument has no basis in fact. Although City asserts that the only service for which Ace is paid is the removal of trash and that this service is complete when the discarded trash is picked up, the evidence presented by Ace is to the contrary.

Specifically, William Eells, Ace's president, testified that Ace's service may be broken down into three components. According to Mr. Eells, picking up the trash within the city represents one-quarter to one-third of the total time expended by Ace; transportation from the city limits to the landfill site in New Jersey and back represents one-half of the total time; and disposal of the trash at the landfill site represents the balance.

■ Ace also introduced into evidence representative agreements which similarly show the division of Ace's service into three components and the breakdown of its fee for each component. Contrary to City's assertions, we conclude that Ace does not provide a single, indivisible service which is performed wholly within the city and further conclude that Ace is paid for more than the removal of trash. Although not specifically challenged by City, we also conclude that the

Board properly allocated 65% of Ace's service to service performed outside Philadelphia, in light of the evidence presented by Ace.[3]

Second, City's argument must be rejected on the basis that it does not find support in the applicable ordinance and regulations. MLT is a tax payable for the privilege of doing business within the city and is measured by a taxpayer's annual gross volume of business.

In granting MLT relief to Ace, the Board relied on Section 19–1001(6)(d) of the Philadelphia Code (Code). Pursuant to this section, gross volume of business is defined as "[t]he gross receipts of a business ... but excluding: (d) Receipts or that portion thereof attributable to any services actually performed outside the limits of the City." The regulations similarly exclude from gross receipts and omit from the tax base those "[r]eceipts or that portion thereof attributable to any service actually performed outside the limits of the City of Philadelphia." MLT Regulation § 303(a)(9)(b). *See also* MLT Regulation § 303(a)(9)(c).

Under the ordinance and the regulations, it is not relevant whether a "unitary" service or a series of services is performed. To the extent that a taxpayer performs *any* service outside of the city, the gross receipts attributable thereto are excluded from the taxpayer's gross volume of business for MLT purposes.

Third, City's argument lacks support in the relevant case law. In support of its position, City attempts to distinguish the present appeal from *Philadelphia Tax Review Board v. Manheim Laundry Co.*, 398 Pa. 265, 157 A.2d 372 (1960), in which part of a taxpayer's service included picking up soiled laundry at its customers' homes and returning it to them when clean. Our supreme court concluded that, to the extent that the taxpayer picked up and delivered laundry to customers beyond the limits of Philadelphia, the receipts attributable

---

3. We reject City's assertion that the Board abused its discretion when it requested City to provide it with a "compromise figure" to consider along with Ace's figure of 65%.

thereto were not subject to tax. Contrary to City's assertions, however, we do not find it to be dispositive that, unlike the customers and their laundry in *Manheim,* the customers in the instant case do not continue to hold title in the trash once it is picked up by Ace.

■ With respect to the second issue, we note that GBT also is a tax imposed for the privilege of carrying on business in Philadelphia and is based generally on gross receipts. In this regard, City asserts that the standard by which receipts are excluded from tax for GBT purposes is different from that used for purposes of MLT. It is City's position that whether or not any part of Ace's service was performed outside the city limits has no bearing on the amount of GBT owed by Ace.

■ In support of its position, City asserts that GBT Regulation Section 205(a) is controlling. Specifically, City cites to paragraph (1) which provides that "[r]eceipts from any transaction shall be attributable to Philadelphia if any event forming a part of the transaction occurs in Philadelphia." City also cites to paragraph (2) which states, in pertinent part, that "[r]eceipts will be deemed attributable to Philadelphia if they result from the efforts of employees who work in, or from, or attached to taxpayer's Philadelphia place of business."

Although City correctly recites the language of subsection (a) of Section 205, City ignores the provisions of subsection (b) relating to interstate commerce. In concluding that Ace was entitled to exclude for GBT purposes those receipts attributable to service performed in New Jersey, the Board specifically relied on Section 205(b)(1) and (2) of the GBT regulations.[4] Pursuant to Section 205(b)(1), "[r]eceipts from transactions involving more than one state are not exempt from tax, but are to be included in the tax base either in their entirety or on an apportioned basis, as provided in these regulations." Section 205(b)(2) provides that "[t]ransactions will be deemed to involve interstate commerce only when they directly involve the ... transportation of commodities between the states...."

---

4. The Board also erroneously cited Section 303(9)(b) of the GBT regulations which does not exist.

In determining whether Ace's service constitutes interstate commerce and thus falls within the ambit of subsection (b), we must first look to the definition of commodities. According to Black's Law Dictionary (5th ed. 1979), "commodities" include, *inter alia*, "[t]hose things which are useful or serviceable, particularly articles of merchandise movable in trade." Black's further explains that this "word is a broader term than merchandise, and, in referring to commerce may include almost any article of movable or personal property."

Because the trash removed by Ace constitutes movable property, we conclude that it meets the rather broad definition of commodities and that Ace's service involves the transportation of commodities between states and, therefore, constitutes interstate commerce. Having determined that Ace's service falls within the ambit of Section 205(b), we accordingly conclude that the Board properly determined that Ace's receipts were to be included in its tax base on an apportioned basis. We further conclude that the trial court did not err in affirming this determination, particularly given that an administrative agency's interpretation of the law which it is empowered to enforce is entitled to great deference and will not be reversed unless clearly erroneous. *See No. 1 Cochran, Inc. v. Unemployment Compensation Board of Review,* 135 Pa.Commonwealth Ct. 252, 579 A.2d 1386 (1990), *petition for allowance of appeal denied,* 527 Pa. 653, 593 A.2d 424 (1991).

Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, September 13, 1993, the order of the Court of Common Pleas of Philadelphia County is affirmed.